**Bahrami Lee HUMBLE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 93–CA–1830–MR.**

Court of Appeals of Kentucky.

Nov. 18, 1994.

Daniel T. Goyette, Jefferson Dist. Public Defender and Bruce P. Hackett, Deputy Appellate Defender, Jefferson District Public Defender, Louisville, for appellant.

Chris Gorman, Atty. Gen. and Ian G. Sonego, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

Before HUDDLESTON, JOHNSON and McDONALD, JJ.

### OPINION

McDONALD, Judge.

Following a trial by jury in the Jefferson Circuit Court, Bahrami Lee Humble was convicted of two counts of trafficking in a controlled substance (cocaine). He then waived sentencing by jury and the court

sentenced him to five (5) years' imprisonment on each count with the terms to run concurrently. He now appeals the judgment of conviction raising three grounds for reversal. Having concluded his substantial rights were violated when the trial court failed to strike for cause a prospective juror, the judgment must be reversed.

Humble was indicted on October 28, 1991. The matter came on for trial on May 12, 1993, at which time the Commonwealth and defense began the process of voir dire for purposes of selecting an impartial jury to sit in judgment on this case. There is no dispute concerning the exchange that occurred between venireperson, Mr. Wilbert, counsel and the court during this procedure. The parties do disagree concerning the legal significance of Wilbert's responses. The colloquy occurred as follows:

> DEF. COUNSEL: After that explanation, how many would require Bahrami to say more than "I plead not guilty. I didn't do it." Would any of you require him to testify to say "I didn't do it" before you find him not guilty?
>
> JUROR: Number 77 [Wilbert]. I believe I'd have to go by how the trial went up to that point. If it looked bad for him, and he didn't get up and take up and care for himself, I'm afraid it would interfere with my judgment.
>
> DEF. COUNSEL: So you would say that, given everything, you would give an inference against the defendant if he had not testified?
>
> JUROR: If everything looked bad from the testimony and that, and he didn't get up and take care of himself, yes, I'm afraid it would go against my judgment, would affect my judgment.
>
> DEF. COUNSEL: And this is something you've thought about. You've listened to what the judge had to say?
>
> JUROR: I've [inaudible], but I still feel this way.
>
> JUDGE: Let me ask you this. If you'd heard the evidence presented and defendant did not take the stand, and it went to you all for deliberation and I told you all what the law of the case is, in other words, these are the items that the Com-

monwealth had to prove in order to establish the case which has been charged. And if you applied the facts that you heard to the law that I give you *and you didn't think the Commonwealth had proved those facts,* even though he didn't testify, the question is: could you, under those circumstances, then render a verdict of "not guilty"? (Emphasis supplied).

> JUROR: Under the circumstances, I believe I could, Your Honor, but it would be tough.

Following this discourse, Humble challenged Wilbert for cause seeking his disqualification by the court. The court denied the motion refusing to strike Wilbert from the jury panel for cause. A peremptory strike was ultimately utilized by Humble to remove Wilbert. Humble exercised all of his peremptory strikes and asserts that but for the necessity of using a peremptory challenge to strike Wilbert, he would have stricken Mr. Bruce Adams (Juror No. 128) who sat in judgment on the Commonwealth's prosecution of him in this matter.

We are quite aware that the trial court is vested with discretion in deciding whether jurors should be excused for cause and that an assessment of juror "[i]mpartiality is not a technical conception ... limited to the juror's response to a 'magic question,'" *Montgomery, Sherman and Hudson v. Commonwealth,* Ky., 819 S.W.2d 713 (1991). Additionally we agree that "[a] trial court's decision whether a juror possessed '[a] mental attitude of appropriate indifference' must be reviewed in the totality of circumstances." *Montgomery, id.,* citing *United States v. Wood,* 299 U.S. 123, 146, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). Having reviewed the record in this light, we can but conclude that Wilbert demonstrated a serious problem accepting the concepts of a defendant's right to remain silent, the burden of proof and the presumption of innocence. When questioned, Wilbert expressed an opinion that is directly contrary to the legally applicable standard.

RCr 9.36 provides in pertinent part:

**Rule 9.36. Challenges to individual jurors.**—(1) Challenges for cause shall be made first by the Commonwealth and then by the defense. No peremptory challenge shall be permitted before the voir dire has been completed for all parties. When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall be excused as not qualified.

(2) After the parties have been given the opportunity of challenging jurors for cause, each side or party having the right to exercise peremptory challenges shall be handed a list of qualified jurors drawn from the box equal to the number of jurors to be seated plus the number of allowable peremptory challenges for all parties. Peremptory challenges shall be exercised simultaneously by striking names from the list and returning it to the trial judge.

and RCr 9.40 provided in pertinent part:

**Rule 9.40. Peremptory challenges.**— (1) If the offense charged is a felony, the Commonwealth is entitled to five (5) peremptory challenges and the defendant or defendants jointly to eight (8) peremptory challenges. If the offense charged is a misdemeanor, the Commonwealth is entitled to three (3) peremptory challenges and the defendant or defendants jointly to three (3) peremptory challenges.

(2) If one (1) or two (2) additional jurors are called, the number of peremptory challenges allowed each side and each defendant shall be increased by one (1).[1]

■ We know that "[t]he rules specifying the number of peremptory challenges are not mere technicalities, they are substantial rights and are to be fully enforced." *Thomas v. Commonwealth,* Ky., 864 S.W.2d 252 (1993), *cert. den., Kentucky v. Thomas,* —— U.S. ——, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994). Kentucky law is stated thus:

... [P]rejudice is presumed, and the defendant is entitled to a reversal in those cases where a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause.... Kentucky rules of procedure require neither the "exercise of [a] peremptory challenge [ ]" to remove the juror challenged for cause, nor proof that "an incompetent juror [was] forced upon him" [citing and distinguishing *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).] before prejudice is presumed. The longstanding rule in Kentucky requires only that:

"A party must exercise all of his peremptory challenges in order to sustain a claim of prejudice due to the failure of the court to grant a requested challenge for cause." Abramson, *Kentucky Practice,* (Criminal Rules) Vol. 9, Sec. 25.50 (1987).

When a defendant *does* exhaust all his peremptory challenges, he has been denied the full use of peremptory challenges by having been required to use peremptory challenges on jurors who should have been excused for cause.

*Thomas* at 259.

■ In the present case, Mr. Wilbert's attitude as expressed during voir dire clearly demonstrated his judgment would be affected by the fact that an accused did not take the stand and testify in his own behalf. His response to the question posed by the court revealed that, even if the Commonwealth failed to prove the essential elements of the crime charged, he would have difficulty rendering a verdict of "not guilty" if the defendant did not testify. It has long been held, as noted in *Alexander v. Commonwealth,* Ky., 862 S.W.2d 856 (1993), that: "It is the probability of bias or prejudice that is determinative in ruling on a challenge for cause." *Pennington v. Commonwealth,* Ky., 316 S.W.2d 221, 224 (1958). Mr. Wilbert's tenta-

---

1. This was the version of the rule applicable at the time this case was tried on May 12, 1993. For informational purposes, we note that effective October 1, 1994, Section (1) of the rule was amended and now provides: "If the offense charged is a felony, the Commonwealth is entitled to *eight (8)* peremptory challenges and the defendant or defendants jointly to eight (8) peremptory challenges. If the offense charged is a misdemeanor, the Commonwealth is entitled to three (3) peremptory challenges and the defendant or defendants jointly to three (3) peremptory challenges."

tive affirmation coupled with the expression that "it would be tough" to the court's leading question concerning whether he could render a verdict of not guilty, if the Commonwealth failed to prove the case even though the defendant did not testify, did not eradicate the bias and prejudice that he had clearly demonstrated. Wilbert had related unequivocally that it would "interfere with his judgment" if the defendant did not get up and take care of himself, and then responded a second time when asked if he would give an inference against the defendant if he had not testified, "... yes, I'm afraid it would go against my judgment, would affect my judgment." Having then been reminded about what the judge had said regarding the law, Wilbert replied, "... but I still feel this way." *Thomas, supra,* quoting *Montgomery, supra,* relates that:

> The message from this decision to the trial court is the 'magic question' does not provide a device to 'rehabilitate' a juror who should be considered disqualified by his personal knowledge or past experience, or his attitude as expressed on voir dire. We declare the concept of 'rehabilitation' is a misnomer in the context of choosing qualified jurors and direct trial judges to remove it from their thinking and strike it from their lexicon. (Emphasis added).

*Thomas* at 258. Wilbert's response to the court's question served only to emphasize his inability to sit impartially, disregard his opinion and apply the appropriate legal standard. Any doubt concerning Wilbert's ability to deliberate upon and decide the case according to the evidence and instructions of the court should have been resolved in Humble's favor. *See Marsch v. Commonwealth,* Ky., 743 S.W.2d 830 (1988); *Randolph v. Commonwealth,* Ky., 716 S.W.2d 253 (1986); and *Calvert v. Commonwealth,* Ky.App., 708 S.W.2d 121 (1986).

■ Wilbert should have been excused as not qualified. The trial court's failure to disqualify Wilbert for cause coupled with the fact that Humble exhausted all his peremptory challenges, including the use of one of those challenges to remove venireperson Wilbert, was an abuse of discretion and constituted an infringement of Humble's right to exercise peremptory challenges. Such infringement was tantamount to reversible error. *Thomas, supra; Alexander, supra; Marsch v. Commonwealth, supra.*

■ We will briefly address Humble's second argument on appeal; namely:

THE TRIAL COURT ERRED BY PERMITTING A COMMONWEALTH WITNESS TO REMAIN IN THE COURTROOM THROUGHOUT THE TRIAL AFTER THE SEPARATION OF WITNESSES' RULE HAD BEEN INVOKED WITHOUT REQUIRING THE COMMONWEALTH TO DEMONSTRATE NECESSITY UNDER KRE 615(3).

Kentucky Rule of Evidence (KRE) 615 provides:

**Rule 615 Exclusion of witnesses.** At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This rule does not authorize exclusion of:

(1) A party who is a natural person;

(2) An officer or employee of a party which is not a natural person designated as its representative by its attorney; or

(3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

The trial court ruled that Detective Ledoux, who was a Jefferson County Police officer assigned to Metro Narcotics, and who was the lead investigator for the Commonwealth on this case fell under the second exception set forth in KRE 615. Therefore, the trial court found the prosecutor's designation of Detective Ledoux as the Commonwealth's representative constituted adequate compliance with the rule. We conclude that the court did not err in allowing the witness to remain in the courtroom pursuant to KRE 615(2). Requiring the Commonwealth to demonstrate that Detective Ledoux's presence was essential to the presentation of its case is not required where the officer in question is the agent and designated representative of the Commonwealth. There has been no showing that the trial court abused its discretion under the criminal rules or the

case law construing those rules. *See* RCr 9.48. The adoption of KRE 615 did not eliminate nor is it inconsistent with RCr 9.48. We conclude that KRE 615 does not require exclusion of the Commonwealth's designated investigator, particularly when there has been no showing of specific prejudice by the defendant. *Cf., Smith v. Commonwealth,* Ky., 788 S.W.2d 266 (1990), *cert. den., Smith v. Kentucky,* 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990); and *Kimbrough v. Commonwealth,* Ky., 550 S.W.2d 525 (1977).

■ Humble's final argument for reversal is that:

THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO CONFRONT AND CROSS–EXAMINE THE WITNESSES AGAINST HIM AND TO PRESENT A DEFENSE WHEN THE TRIAL COURT RESTRICTED THE CROSS–EXAMINATION OF DETECTIVE LEDOUX AND REFUSED TO PERMIT THE INTRODUCTION OF CERTIFIED COURT RECORDS RELATING TO THE CONFIDENTIAL INFORMANT.

Humble contends that the trial court erred in limiting the cross-examination of Detective Ledoux concerning impeachment of the credibility of Andrew Cummings, the Commonwealth's confidential informant. Having reviewed the record, we conclude Humble's argument in this vein lacks merit. It is our opinion that the trial court did not in any way abuse its discretion in limiting cross-examination on this point. It is clear that Humble was permitted to sufficiently examine Ledoux for the purpose of impeaching Cummings' credibility. The jury was apprised of the fact that Cummings had assisted the detective in making cocaine purchases, and that he was paid to be a confidential informant on

drug cases. It was also revealed through cross-examination that his motivation to assist was self-serving in that he was attempting to work out a criminal charge against himself. Defense counsel told the jury that Cummings got $100 per buy, that he had incentive to create drug buys, and that he could easily have set up another individual to be involved in making such a sale.

■ Trial judges are vested with wide latitude in limiting a criminal defendant's right to cross-examine witnesses. *See Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1989), *cert. den., Moore v. Kentucky,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 774 (1990). The cross-examination complained of here was the limitation of cross-examination of one witness concerning the credibility of a non-witness. The trial court did, in fact, allow extensive examination in this area and certainly acted within its authority in limiting the extent and duration of the questioning. *Moore, supra.* It is apparent that the jury had enough information to make an appraisal of Cummings' possible motive or bias and was amply able to assess the defense theory in this regard.

Based on our analysis and reasoning addressing Humble's first ground asserted, the judgment of the Jefferson Circuit Court is reversed and the case is remanded for a new trial.

All concur.